# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GHALEB AZROUI, individually and on behalf of all others similarly situated | |
| Plaintiff, | Judge: Hon. Jorge L. Alonso |
| v. | Case No. 1:18-cv-03709 |
| HEALTH BENEFITS ONE, LLC d/b/a HEALTH BENEFITS CENTER a/k/a HEALTH REGISTRATION CENTER a/k/a SIMPLE HEALTH, a Florida limited liability company | Jury Trial Demanded |
| Defendant. | |

### DEFENDANT HEALTH BENEFITS ONE, LLC'S
### ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

Defendant Health Benefits One, LLC ("HBO"),[1] by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 8(b), answers the Class Action Complaint (the "Complaint") filed by Ghaleb Azroui (the "Plaintiff") as stated herein. HBO denies any allegations that it does not specifically admit or disclaim knowledge of in this Answer.

### Preliminary Statement

The gist of Plaintiff's Complaint is that he received an unsolicited communication from HBO (which HBO denies). Rather than provide a "short and plain statement" of this claim, Plaintiff's Counsel filed a "lengthy, rambling [246 paragraph] complaint [which] violates Fed. R. Civ. P. 8(a)(2)." *Cox v. Mackowiak*, No. 12 C 7564, 2013 WL 3071252, at *1 (N.D. Ill. June 18, 2013). Specifically, the complaint "contains numerous legal arguments and case citations, which

---

[1] For ease of reference, where the Plaintiff used "HBC" in his allegations, Defendant has replaced it with "HBO."

are inappropriate in a complaint." *Id.*; *Green v. Teddie Kossof's Salon & Day Spa*, No. 13 C 6709, 2014 WL 499010, at *4 (N.D. Ill. Feb. 7, 2014) ("[A] complaint need not contain legal argument or case citations. The plaintiff should set forth only the basic facts indicating how the defendant allegedly violated the law."). Defendant has undertaken a good-faith effort to comply with the requirements of Rule 8 notwithstanding Plaintiff's failure to do so.

In addition, by filing this Answer, HBO is not waiving the arguments in its previously filed Motion to Dismiss. Rather, HBO is filing this Answer pursuant to this Court's Order (ECF No. 12) and the Standing Order Regarding Mandatory Initial Discovery Pilot Project, which states that "[p]arties must file answers, counterclaims, crossclaims, and replies within the time set forth in Rule 12(a)(1)-(3) even if they have filed or intend to file a motion to dismiss or other preliminary motion."

## INTRODUCTION

1. Plaintiff brings this action against HBO pursuant to Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") and Illinois Automatic Telephone Dialers Act ("ATDA") pursuant to 815 ILCS 305, *et seq.*

**ANSWER**: HBO admits that Plaintiff purports to bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA") and the Illinois Automatic Telephone Dialers Act ("ATDA"), 815 ILCS 305, *et seq.,* but HBO denies the remaining allegations contained in Paragraph 1, and specifically denies that HBO violated the TCPA or the ATDA, that HBO is a proper Defendant, that Plaintiff or any purported class member is entitled to any relief whatsoever, that Plaintiff can represent a class, or that any class can be certified.

2. Defendant violated the TCPA by placing unsolicited calls made to the cellular telephone numbers of Plaintiff and others using an automatic telephone dialing system ("ATDS") and/or a "predictive dialer" as this term has been defined and adopted by the Federal Communications Commission ("FCC").

2

**ANSWER**: HBO denies the allegations contained in Paragraph 2, and specifically denies that it made any calls to Plaintiff whatsoever.

3.     Defendant also violated the TCPA and the ATDA by placing unsolicited calls made to the cellular telephone numbers of Plaintiff and others where Defendant's calls played artificial or pre-recorded voice messages.

**ANSWER**: HBO denies the allegations contained in Paragraph 3, and specifically denies that it made any calls to Plaintiff whatsoever.

4.     As detailed below, Defendant did not have Plaintiff's express prior consent (oral or in writing) to call Plaintiff's cellular telephone number with an ATDS or a predictive dialer, nor did Defendant have Plaintiff's express prior consent to play or leave artificial or pre-recorded voice messages on his cellular telephone number.

**ANSWER**: HBO states that it did not make any calls to Plaintiff, and denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4.

### PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff, GHALEB AZROUI, is natural person over 18-years-of-age who, at all times relevant, was a consumer residing in Illinois.

**ANSWER**: HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 5.

6.     Plaintiff was the sole user, subscriber, owner, and possessor of the cellular telephone that is assigned to (773)968-7496.

**ANSWER**: HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6.

7.     HBO, is a Florida limited liability company with its principal place of business located in Hollywood, Florida.

**ANSWER**: HBO admits that it is a Florida limited liability company with its principal place of business located in Hollywood, Florida.

3

8.    HBO operates as a full-service national health insurance agency and "call center" and provides health and life insurance options to customers nationwide.[1]

FN 1.  https://www.bloomberg.com/profiles/companies/1250363D:US-health-benefits-center (last accessed on April 13, 2018.)

**ANSWER**:  HBO admits only that Paragraph 8 and its footnote quotes an excerpt from the website  https://www.bloomberg.com/profiles/companies/1250363D:US-health-benefits-center and denies all remaining allegations.

9.    HBO has represented that it serves health insurance needs for underserved people in all 50 states.[2]

FN 2. https://www.businesswire.com/news/home/20150317005152/en/Florida's-Health-Benefits-Center-Announces-Major-Statewide (last accessed on April 13, 2018).

**ANSWER**:  HBO admits only that Paragraph 9 and its footnote cites to an excerpt from the website  https://www.businesswire.com/news/home/20150317005152/en/Florida's-Health-Benefits-Center-Announces-Major-Statewide displaying a document dated March 17, 2015 that quotes HBO's CEO for the proposition that HBO is "serving health insurance needs for underserved people in all 50 states," and denies the remaining allegations.

10.    HBO uses telemarketing to promote its insurance and health care related goods and services.

**ANSWER**:  HBO states that it does not make outgoing calls to promote its business and therefore denies the allegations contained in Paragraph 10.

11.    HBO used telemarketing to promote its insurance and health care related goods and services to consumers in the State of Illinois, including, but not limited to Plaintiff.

**ANSWER**:  HBO states that it does not make outgoing calls to promote its business and therefore denies the allegations contained in Paragraph 11.

12.    Subject matter jurisdiction is conferred upon this Court by the TCPA, and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

4

**ANSWER**:  HBO denies the allegations contained in Paragraph 12.

13.     The Court has supplemental jurisdiction over the state law IATDA claim under 28 U.S.C. §1367.

**ANSWER**:  HBO denies the allegations contained in Paragraph 13.

14.     The Court further has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), because (i) at least one member of the putative class is a citizen of a state different from HBO, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that section apply to this action.

**ANSWER**:  HBO denies the allegations contained in Paragraph 14, and specifically denies that the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d) is applicable to this case because neither Plaintiff nor any purported class member is entitled to any relief whatsoever, Plaintiff cannot represent a class, and no class can be certified.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 as HBO conducts business in the Northern District of Illinois.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15.

16.     Additionally, the events or omissions giving rise to Plaintiff's claims occurred within the Northern District of Illinois because Plaintiff received the subject telephone calls and pre-recorded messages in this District.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16.

## SUMMARY OF THE TCPA

17.     Section 227(b)(3)(A) of the TCPA states that "[a] person or entity may . . . bring . . . (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin any such violation."

**ANSWER**:  HBO admits only that Paragraph 17 accurately quotes a portion of Section 227(b)(3)(A) of the TCPA and denies any remaining allegations, including characterizations

5

Plaintiff insinuates are to be drawn from the quoted language.

18.    Section 227(b)(3)(B) of the TCPA provides for a minimum of $500 in damage for each such violation" of subsection 227(b)(1)(A)(iii).

**ANSWER**:  HBO admits only that Paragraph 18 attempts to quote a portion of Section 227(b)(3)(B) of the TCPA and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the language he attempts to quote.

19.    Section 227(b)(3)(C) of the TCPA states:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

**ANSWER**:  HBO admits only that Paragraph 19 accurately quotes a portion of Section 227(b)(3)(C) of the TCPA and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

20.    Congress enacted the TCPA to regulate and prohibit certain types of automated and pre-recorded telemarketing calls.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20, except admits that certain sections of the TCPA regulate automated and prerecorded telemarketing calls.

21.    In enacting the TCPA, Congress wrote that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991).

**ANSWER**:  HBO admits only that Paragraph 21 accurately quotes a portion of Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 13, 105 Stat. 2394 (1991) and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the

6

quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

22.    On August 18, 2002, the FCC explained identified why "computerized calls" annoy citizens:

> "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall . . . [O]wning a telephone does not give the world the right and privilege to assault the consumer with machine-generated telephone calls." 137 CONG. REC. S9874 (July 8, 1991)(statement of Sen. Hollings).

See, "Notice of Proposed Rulemaking and Memorandum Opinion and Order" (the "2002 NPRM"), fn. 90.[3]

FN. 3 The Court may take judicial notice of the 2002 NRM which can be found at: https://apps.fcc.gov/edocs_public/attachmatch/FCC-02-250A1.pdf

**ANSWER**:  HBO admits only that Paragraph 22 and its footnote accurately quotes a portion of "Notice of Proposed Rulemaking and Memorandum Opinion and Order" (the "2002 NPRM") released on September 18, 2002, fn. 90 and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material, and denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in footnote three because Plaintiff does not explain the basis for his assertion, including (among other things) the portion(s) of the NPRM he invokes and the purpose(s) for which he invokes it/them.

23.    Pursuant to authority granted by the TCPA pursuant to 47 U.S.C. § 227(b)(2), the FCC has issued regulations regarding pre-recorded telephone messages.

**ANSWER**: HBO admits only that the FCC has issued some regulations regarding some prerecorded telephone messages pursuant to 47 U.S.C. § 227(b)(2) and denies any remaining allegations contained in Paragraph 23.

24. The FCC was authorized to enact 47 CFR 64.1200(b)[4] pursuant to Section 227(b)(2) of the TCPA which provides that the FCC "shall prescribe regulations to implement the requirements of this subsection."

FN 4. The FCC's rules and regulations are located in Title 47 of the Code of Federal Regulations (CFR).

**ANSWER**: HBO denies the allegations contained in Paragraph 24 and its footnote except admits that some of the FCC's rules and regulations are located in Title 47 of the Code of Federal Regulations.

25. Section 227(b)(3) of the TCPA provides a private right of action for violations of the TCPA and the FCC's regulations:

(3) Private Right of Action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A)an action based on a violation of this subsection *or the regulations prescribed under this subsection* to enjoin such violation[.]

(Emphasis supplied).

**ANSWER**: HBO admits only that Paragraph 25 accurately quotes a portion of Section 227(b)(3) of the TCPA, that the TCPA provides a private right of action for some violations, and denies any remaining allegations contained in Paragraph 25 (such as characterizations Plaintiff insinuates are to be drawn from the quoted language).

26. 47 CFR 64.1200(b)(1) regulates artificial or pre-recorded telephone messages and states that "[a]ll artificial or prerecorded telephone messages shall":

(1) At the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the

call. If a business is responsible for initiating the call, the name under
which the entity is registered to conduct business with State Corporation
Commission (or comparable regulatory authority) must be stated.

**ANSWER**:  HBO admits only that Paragraph 26 accurately quotes a portion of 47 CFR

§ 64.1200(b)(1) and denies any remaining allegations (such as characterizations Plaintiff

insinuates are to be drawn from the quoted language, including with regard to the precedential

value of and applicability of the excerpted language to this matter).

27.     The FCC's *Rules and Regulations Implementing the Telephone Consumer
Protection Act (TCPA) of 1991; Final Rule,* FR Doc 03-18766, 68 Fed. Reg. 143, at pg. 44163
"2003 Final Rule" states:

> With respect to the caller's name, the prerecorded message must contain,
> at a minimum, the legal name under which the business, individual or
> entity calling is registered to operate. The Commission recognizes that
> some businesses use "d/b/as" or aliases for marketing purposes. The rule
> does not prohibit the use of such additional information, provided the
> legal name of the business is also stated.

The FCC's 2003 Final Rule can be found at https://www.gpo.gov/fdsys/pkg/FR-2003- 07-
25/pdf/03-18766.pdf

**ANSWER**:  HBO admits only that Paragraph 27 accurately quotes a portion of *Rules and*

*Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991; Final Rule,*

FR Doc 03-18766, 68 Fed. Reg. 143, at pg. 44163 and denies all remaining allegations (such as

characterizations Plaintiff insinuates are to be drawn from the quoted language, including with

regard to the precedential value of and applicability of the excerpted language to this matter).

28.     47 CFR § 64.1200(b)(2) regulates artificial or pre-recorded telephone messages
and states that "[a]ll artificial or prerecorded telephone messages shall":

> (2) During or after the message, state clearly the telephone
> number (other than that of the autodialer or prerecorded message
> player that placed the call) of such business, other entity or
> individual.

**ANSWER**: HBO admits only that Paragraph 28 accurately quotes a portion of 47 CFR § 64.1200(b)(2) and denies any remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter).

29. 47 CFR § 64.1200(b)(3) regulates "[a]ll artificial or prerecorded telephone messages" and states:

> In every case where the artificial or prerecorded voice telephone message includes or introduces an advertisement or constitutes telemarketing and is delivered to a [cellular telephone service], provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section. When the called person elects to opt out using such mechanism, the mechanism must automatically record the called person's number to the seller's do-not-call list and immediately terminate the call . . . .

**ANSWER**: HBO admits only that Paragraph 29 accurately quotes a portion of 47 CFR § 64.1200(b)(3) and denies any remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter).

30. In 2003, the FCC declared that a "predictive dialer" constitutes an "automatic telephone dialing system" as the term "automatic telephone dialing system" is defined by the TCPA.[5]

FN 5. While Defendant may disagree with the analysis performed by the FCC, as well as the FCC's conclusion that a predictive dialer constitutes an automated dialing system for the purposes of enforcing the TCPA, these allegations are intended to identify *what the FCC has publically stated*. Thus, while Defendant may attempt argue that these allegations need not be answered on the grounds that they constitute "legal conclusions", FRCP 8()(1)(B) requires a party to "admit or deny the allegations asserted against it" and FRCP 8(b)(2) states that "[a] denial must fairly respond to the substance of the allegation." Further, FRCP (b)(6) states that "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."

**ANSWER**: HBO admits only that the FCC stated in 2003 that a predictive dialer falls

within the meaning and statutory definition of "automatic telephone dialing equipment" and denies any remaining allegations of Paragraph 30 (such as characterizations Plaintiff insinuates are to be drawn from the allegations, including with regard to the precedential value of the FCC's 2003 statement and applicability of it to this matter). With regard to Footnote 5 of Paragraph 30, HBO admits only that it disagrees with the analysis performed by the FCC (as did the D.C. Circuit in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), wherein the D.C. Circuit vacated the FCC's pronouncements on the interpretation of ATDS)[2] and that some of the words Plaintiff attempts to quote in Footnote 5 from Rule 8 of the Federal Rules of Civil Procedure appear in Rule 8 of the Federal Rules of Civil Procedure, and denies all remaining allegations.

      31.     According to the FCC:

> A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. Such software programs are set up in order to minimize the amount of downtime for a telemarketer. In some instances, a consumer answers the phone only to hear "dead air" because the dialer simply hangs up when no telemarketer is free to take the call.

See 2003 FCC Order at fn. 31, https://apps.fcc.gov/edocs_public/attachmatch/FCC- 03-153A1.pdf

    **ANSWER**: HBO admits only that Paragraph 31 accurately quotes a portion of the 2003 FCC Order and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and

---

[2] *See*, e.g., *Sessions v. Barclays Bank Del.*, No. 1:17-CV-01600-LMM, 2018 U.S. Dist. LEXIS 108453, at *10 (N.D. Ga. June 25, 2018) ("[T]he D.C. Circuit clearly held that it invalidated all of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS. Indeed, the FCC specifically challenged the D.C. Circuit's jurisdiction to review its 2003 and 2008 orders in *ACA International*.").

applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

32. The 2003 FCC Order explained how predictive dialers can be "set" to call consumers:

> Each telemarketing company can set its predictive dialer software for a predetermined abandonment rate (i.e., the percentage of hang-up calls the system will allow). The higher the abandonment rate, the higher the number of hang-up calls. High abandonment rates increase the probability that a customer will be on the line when the telemarketer finishes each call. It also, however, increases the likelihood that the telemarketer will still be on a previously placed call and not be available when the consumer answers the phone.

2003 FCC Order at fn. 32.

**ANSWER**: HBO admits only that Paragraph 32 accurately quotes a portion of the 2003 FCC Order and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

33. The 2003 FCC Order discussed how predictive dialers attempt "to 'predict' the average time it takes for a consumer to answer the phone."

**ANSWER**: HBO admits only that Paragraph 33 accurately quotes a portion of the 2003 FCC Order and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

34. Paragraph 146 of the 2003 FCC Order states:

> Predictive dialers initiate phone calls while telemarketers are talking to

12

> other consumers and frequently disconnect those calls when a
> telemarketer is unavailable to take the next call. In attempting to "predict"
> the average time it takes for a consumer to answer the phone and when a
> telemarketer [or collection agent] will be free to take the next call,
> predictive dialers may either "hang-up" on consumers or keep the
> consumer on hold until connecting the call to a sales representative,
> resulting in what has been referred to as "dead air." (footnote omitted).

**ANSWER**: HBO admits only that Paragraph 34 accurately quotes a portion of the 2003

FCC Order and denies all remaining allegations (such as characterizations Plaintiff insinuates are

to be drawn from the quoted language, including with regard to the precedential value of and

applicability of the excerpted language to this matter), except denies that it has knowledge or

information sufficient to form a belief as to the truth of the quoted material.

35.    2003 FCC Order discussed how the use of predictive dialers result in "dead air"
or hang-up calls:

> the widespread use of predictive dialers now results in many "dead air"
> or hang-up calls in which consumers do not even have the opportunity to
> make a do-not-call request. Such calls are particularly burdensome for the
> elderly and disabled consumers.

2003 FCC Order, ¶ 91.

**ANSWER**: HBO admits only that Paragraph 35 accurately quotes a portion of the 2003

FCC Order and denies all remaining allegations (such as characterizations Plaintiff insinuates are

to be drawn from the quoted language, including with regard to the precedential value of and

applicability of the excerpted language to this matter), except denies that it has knowledge or

information sufficient to form a belief as to the truth of the quoted material.

36.    Paragraph 8 of the 2003 FCC Order discussed how predictive dialers "frequently
abandon calls before a [representative] is free to take the next call." 2003 FCC Order, Paragraph
8 (footnotes omitted).

**ANSWER**: HBO admits only that Paragraph 36 accurately quotes a portion of the 2003

FCC Order and denies all remaining allegations (such as characterizations Plaintiff insinuates are

to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

37.     The 2002 FCC Order described the number and types of consumer complaints that it had received regarding so-called "dead air." According to the 2002 FCC Order:

> In 1991, the Commission received a total of 757 complaints regarding calls placed to subscribers by autodialers. From June 2000 to December 2001, the Commission received over 1,500 inquiries about predictive dialing alone. In addition, the consumer alert titled "Predictive Dialing: Silence on the Other End of the Line" has received over 16,000 hits on the Commission's website since the alert was posted in February of 2001.

2002 FCC Order, ¶ 26 (footnote omitted).

**ANSWER**:  HBO admits only that Paragraph 37 accurately quotes a portion of the 2002 NPRM and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

38.     The 2002 FCC Order explained how predictive dialers result in "disconnected" calls:

> In addition to automatically dialing numbers, predictive dialers are set up to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call. When a consumer answers the telephone, a predictive dialer transfers the call to an available telemarketer. When a predictive dialer simultaneously dials more numbers than the telemarketers can handle, some of the calls are disconnected.  The consumer may hear silence on the line as the call is being transferred or a "click" as the call is disconnected.

2002 FCC Order, ¶ 26 (footnote omitted).

**ANSWER**:  HBO admits only that Paragraph 38 accurately quotes a portion of the 2002 NPRM and denies all remaining allegations (such as characterizations Plaintiff insinuates are to

be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

39.     The Court may take judicial notice that the FCC released a Declaratory Ruling on January 4, 2008 ("2008 FCC Ruling"). A copy of the 2008 FCC Ruling can be found at https://apps.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf

**ANSWER**:  HBO admits only that a copy of the 2008 FCC Ruling can be found at

https://apps.fcc.gov/edocs_public/attachmatch/FCC-07-232A1.pdf and denies all remaining

allegations contained in Paragraph 39 (such as characterizations Plaintiff insinuates are to be

drawn from the 2008 FCC Ruling, including with regard to the precedential value of and

applicability of the 2008 FCC Ruling to this matter), except denies that it has knowledge or

information sufficient to form a belief as to the truth of the allegations regarding judicial notice

because Plaintiff does not explain the basis for his assertion, including (among other things) the

portion(s) of the ruling he invokes and the purpose(s) for which he invokes it/them.

40.     The 2008 FCC Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." 2008 FCC Ruling at ¶ 12.

**ANSWER**:  HBO admits only that Paragraph 40 accurately quotes a portion of the 2008

FCC Ruling and denies all remaining allegations (such as characterizations Plaintiff insinuates

are to be drawn from the quoted language, including with regard to the precedential value of and

applicability of the excerpted language to this matter).

41.     The 2008 FCC Ruling states that it "first sought comment on predictive dialers in 2002 and asked whether using a predictive dialer is subject to the TCPA's autodialer restrictions." See, 2008 FCC Ruling at ¶ 13.

**ANSWER**:  HBO admits only that Paragraph 41 accurately quotes a portion of the 2008

FCC Ruling and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

42.     The 2008 FCC Ruling described the 2002 FCC Order as follows:

> The Commission found that, based on the statutory definition of "automatic telephone dialing system," the TCPA's legislative history, and current industry practice and technology, a predictive dialer falls within the meaning and definition of autodialer and the intent of Congress. The Commission noted that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology.

2008 FCC Ruling at ¶ 13 (footnotes omitted).

**ANSWER**:  HBO admits only that Paragraph 42 accurately quotes a portion of the 2008 FCC Ruling and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

43.     To the extent HBO utilized a predictive dialer to contact Plaintiff without his consent, pursuant to the 2003 FCC Order, HBO's use of a predictive dialer would violate the TCPA.

**ANSWER**:  HBO denies the allegations contained in Paragraph 43.

44.     The Seventh Circuit in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) described how predictive dialers work "autonomously."

**ANSWER**:  HBO admits only that that Paragraph 44 accurately alleges that the word

16

"autonomously" appears in *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012), and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the opinion, including with regard to the precedential value of and applicability of the opinion to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the opinion's description.

45.     According to the Seventh Circuit's opinion in *Soppet*:

> The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master.

> Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail. (We use Bill Collector as the caller, but this simplified description could as easily use an advertiser that relies for consent on earlier transactions with Customer, or a box that Consumer checked on a vendor's web site.)

*Id.* at 638.

**ANSWER**:  HBO admits only that Paragraph 45 accurately quotes a portion of *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

46.     Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful to use any "automatic telephone dialing system" or an "artificial or prerecorded voice" to call a person's cellular telephone number "with[out] the prior express consent of the called party."

**ANSWER**: HBO admits only that Paragraph 46 accurately quotes portions of Section 227(b)(1)(A)(iii) of the TCPA and denies all remaining allegations.

47. According to the 2008 FCC Ruling, creditors are "responsible for demonstrating that the consumer provided prior express consent.

**ANSWER**: HBO admits only that Paragraph 47 accurately quotes a portion of the 2008 FCC Ruling and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter).

48. According to the 2008 FCC Ruling:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.

2008 FCC Ruling, ¶ 10 (footnote omitted).

**ANSWER**: HBO admits only that Paragraph 48 accurately quotes a portion of the 2008 FCC Ruling and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

49. In 2015, the FCC issued a Declaratory Ruling and Order which reaffirmed that the burden to demonstrate consent is on the caller:

> regardless of the means by which a caller obtains consent, under

18

longstanding Commission precedent, the burden is on the caller to prove
it obtained the necessary prior express consent if any question of consent
is in dispute.

*See* July 10, 2015, Declaratory Ruling and Order, at ¶ 47, found at
https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1_Rcd.pdf (footnote omitted).

**ANSWER**:  HBO admits only that the FCC issued a Declaratory Ruling and Order on

July 10, 2015, that a copy of the 2015 Declaratory Ruling and Order is located at

https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1_Rcd.pdf, and that some of the

words attributed to the FCC in Paragraph 49 appear in the 2015 Declaratory Ruling and Order,

and denies all remaining allegations contained in Paragraph 49 (such as characterizations Plaintiff

insinuates are to be drawn from the inaccurately quoted language, including with regard to the

precedential value of and applicability of the inaccurately excerpted language to this matter),

except denies that it has knowledge or information sufficient to form a belief as to the truth of the

quoted material.

## ALLEGATIONS RELATED TO THE SUBJECT TELEPHONE CALLS

50.    HBO frequently and persistently called Plaintiff's cellular telephone number
ending in 7496 to deliver telemarketing messages promoting health insurance.

**ANSWER**:  HBO denies the allegations contained in Paragraph 50, except denies that it

has knowledge or information sufficient to form a belief as to the truth of the allegations regarding

Plaintiff's alleged possession of a cellular telephone number.

51.    On August 11, 2017, HBO called Plaintiff's cellular number ending in 7496 from
a telephone number that reflected a 773 area code.

**ANSWER**:  HBO denies the allegations contained in Paragraph 51, except denies that it

has knowledge or information sufficient to form a belief as to the truth of the allegations regarding

Plaintiff's alleged possession of a cellular telephone number.

52.    The Court can take judicial notice that the 773 area code is associated with Chicago and the Chicagoland area.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 52 because Plaintiff does not explain the basis for his assertion, including (among other things) the purpose(s) for which he invokes it.

53.    On information and belief, the telephone call to Plaintiff's cellular number on August 11, 2017, did not emanate from an office maintained or operated by HBO in Chicago or the Chicagoland area.

**ANSWER**:  HBO admits only that it did not make any telephone call to Plaintiff on August 11, 2017 and that it does not maintain or operate an office in Chicago or the Chicagoland area, and denies that it has knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 53, except denies the allegations contained in Paragraph 53 insofar as Plaintiff insinuates that the call he received was from HBO from a location outside of Chicago or the Chicagoland area.

54.    When Plaintiff answered the phone, there was an audible "click" followed by a two-second pause.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 54.

55.    After the short pause, Plaintiff heard a pre-recorded voice message which instructed Plaintiff to follow certain prompts.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55.

56.    After following the prompts, Plaintiff was connected to an HBO representative.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56, except denies that Plaintiff spoke to a representative of HBO.

57.     After connecting to a representative, HBO identified itself and proceeded to advertise and attempt to sell, to Plaintiff, a health insurance plan. In this call, Plaintiff told HBO to stop calling.

**ANSWER**:  HBO denies the allegations contained in Paragraph 57.

58.     Despite Plaintiff's above demand to cease all telephone communications, HBO continued to call Plaintiff on his cellular phone.

**ANSWER**:  HBO denies the allegations contained in Paragraph 58.

59.     At other times when Plaintiff answered telephone calls made by HBO, he was greeted by a pause of dead air which lasted for a few seconds before someone spoke to him.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 59.

60.     At other times, when Plaintiff answered telephone calls from HBO, he was greeted with dead air and the calls were dropped.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 60.

61.     HBO "cold-called" Plaintiff's cellular telephone number to deliver telemarketing messages promoting health insurance.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 61.

62.     HBO's actions in calling Plaintiff's cellular telephone number to deliver telemarketing messages promoting health insurance constituted "cold-calls" because Plaintiff never provided HBO with permission to contact him to promote health insurance.

**ANSWER**: HBO denies the allegations contained in Paragraph 62, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 regarding the permissions Plaintiff may have provided.

63.     HBO frequently and persistently "cold-called" Plaintiff's cellular telephone number to deliver telemarketing messages promoting health insurance.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 63.

64.     On information and belief, HBO frequently and persistently "cold-called" the cellular telephone numbers of other persons in the State of Illinois and other states to deliver telemarketing messages promoting health insurance.

**ANSWER**: HBO denies the allegations contained in Paragraph 64.

65.     It is highly implausible for a company to manually "cold-call" potential consumers for the purpose of delivery live and pre-recorded telemarketing messages.

**ANSWER**: HBO asserts that the generalized, vague, and hypothetical allegations contained in Paragraph 65 are not factual allegations to which a response can meaningfully be made, but to the extent that a response is deemed required, HBO denies that it has knowledge or information sufficient to form a belief as to the truth of such allegations.

66.     It is highly implausible for a company to manually "cold-call" potential consumers for the purpose of delivery live and pre-recorded telemarketing messages.

**ANSWER**: HBO asserts that the generalized, vague, and hypothetical allegations contained in Paragraph 66 are not factual allegations to which a response can meaningfully be made, but to the extent that a response is deemed required, HBO denies that it has knowledge or information sufficient to form a belief as to the truth of such allegations.

67.     Given the high volume of "cold-calls" that must be placed before a "cold lead" turns into an actual sale, it is highly implausible that any telemarketer placed his or her calls to

Plaintiff by manually dialing all ten (10) digits of Plaintiff's cellular number with the telemarketers fingers on a telephone based keypad affixed to a desktop phone system.

**ANSWER**: HBO asserts that the generalized, vague, and hypothetical allegations contained in Paragraph 67 are not factual allegations to which a response can meaningfully be made, but to the extent that a response is deemed required, HBO denies that it has knowledge or information sufficient to form a belief as to the truth of such allegations.

68. Given the high volume of "cold-calls" that must be placed before a "cold lead" turns into an actual sale, it is highly implausible that any telemarketer placed his or her calls to Plaintiff by manually dialing all ten (10) digits of Plaintiff's cellular number with the telemarketers fingers on a computer based touchscreen keypad.

**ANSWER**: HBO asserts that the generalized, vague, and hypothetical allegations contained in Paragraph 68 are not factual allegations to which a response can meaningfully be made, but to the extent that a response is deemed required, HBO denies that it has knowledge or information sufficient to form a belief as to the truth of such allegations.

69. Given the allegations contained within this Section, it is plausible that HBO called Plaintiff's cellular telephone number ending in 7496 using software and/or hardware that stores each of the ten-digit telephone numbers that are and/or were dialed by HBO.

**ANSWER**: HBO asserts that the generalized and vague allegations contained in Paragraph 69 are not factual allegations to which a response can meaningfully be made, but to the extent that a response is deemed required, HBO denies that it has knowledge or information sufficient to form a belief as to the truth of such allegations, except denies that any alleged calls were made by or on behalf of HBO.

70. Given the allegations contained within this Section, it is plausible that HBO called Plaintiff's cellular telephone number ending in 7496 using equipment which has been programmed to sequentially call the stored telephone numbers in order to connect a telephone with a recorded message.

**ANSWER**: HBO denies the allegations contained in Paragraph 70.

23

71.     Given the allegations contained within this Section, it is plausible that HBO called Plaintiff's cellular telephone number ending in 7496 using equipment which has been programmed to randomly call the stored telephone numbers in order to connect a telephone with a recorded message.

**ANSWER**:  HBO denies the allegations contained in Paragraph 71.

72.     Accordingly, HBO used an "autodialer" as defined by 47 U.S.C. §227(a)(1), to place, calls to Plaintiff's cellular telephone number ending in 7496.

**ANSWER**: HBO denies the allegations contained in Paragraph 72.

73.     Additionally, it is plausible to allege that HBO called Plaintiff's cellular phone number to deliver pre-recorded telemarketing messages with an "autodialer" or "autodialer system" as defined by 815/ILCS 305/5.

**ANSWER**:  HBO denies the allegations contained in Paragraph 73.

74.     815/ILCS 305/5 defines a "autodialer" or "autodialer system" to mean "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which was programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect with a called telephone number for the purpose of delivering a recorded message."

**ANSWER**:  HBO admits only that some of the words supposedly excerpted from 815 ILCS 305/5 in Paragraph 74 appear in 815 ILCS 305/5(a) and denies all remaining allegations contained in Paragraph 74 (such as characterizations Plaintiff insinuates are to be drawn from the inaccurately quoted language, including with regard to the precedential value of and applicability of the inaccurately excerpted language to this matter).

75.     Alternatively, HBO called Plaintiff's cellular telephone number using a "predictive dialer" as defined above by the FCC.

**ANSWER**:  HBO denies the allegations contained in Paragraph 75.

76.     On information and belief, prior to calling telephone numbers with the above listed technology for telemarketing purposes, HBO does not use any in-house or third-party services to scrub or screen telephone numbers to see if the telephone numbers appear on the National Do Not Call List.

**ANSWER**: HBO denies the allegations contained in Paragraph 76.

77.     On information and belief, prior to calling telephone numbers with the above listed technology for telemarketing purposes, HBO does not use any in-house or third-party services to scrub or screen telephone numbers to see if the telephone numbers are identified as cellular telephone numbers.

**ANSWER**: HBO denies the allegations contained in Paragraph 77.

78.     HBO used one or more pre-recorded telemarketing messages when it called Plaintiff's cellular telephone number ending in 7496.

**ANSWER**: HBO denies the allegations contained in Paragraph 78.

79.     47 CFR § 64.1200(f)(1) states that "[t]he term *advertisement* means any material advertising the commercial availability or quality of any property, goods, or services."

**ANSWER**: HBO admits only that Paragraph 79 accurately quotes a portion of 47 CFR

§ 64.1200(f)(1) and denies any remaining allegations, including characterizations Plaintiff

insinuates are to be drawn from the quoted language.

80.     HBO called Plaintiff's cellular number for the purpose of delivering an "unsolicited advertisement" as this term is used by 47 U.S.C. § 227(a)(5) and 47 CFR § 64.1200(f)(1) regarding "the commercial availability" of health insurance.

**ANSWER**: HBO denies the allegations contained in Paragraph 80.

81.     Pursuant to 47 CFR § 64.1200(f)(8), the term "prior express written consent" means:

> an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

**ANSWER**: HBO admits only that Paragraph 81 accurately quotes a portion of 47 CFR

§ 64.1200(f)(8) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

82.     Section 64.1200(f)(8) states that a written agreement shall:

> (i) . . . include a clear and conspicuous disclosure informing the person signing that:
>
> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

**ANSWER**:  HBO admits only that Paragraph 82 accurately quotes a portion of 47 CFR § 64.1200(f)(8) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

83.     47 CFR § 64.1200(f)(8)(ii) states that "[t]he term 'signature' shall include an electronic or digital form of signature . . . ."

**ANSWER**:  HBO admits only that Paragraph 83 accurately quotes a portion of 47 CFR § 64.1200(f)(8)(ii) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

84.     Plaintiff never signed any document directly with HBO which contained any of the requirements set forth by 47 CFR § 64.1200(f)(8).

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84.

85.     47 CFR § 64.1200(f)(9) states that "[t]he term *seller* means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

**ANSWER**: HBO admits only that Paragraph 85 accurately quotes a portion of 47 CFR § 64.1200(f)(9) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

86.    47 CFR § 64.1200(f)(11) states that "[t]he term *telemarketer* means the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person."

**ANSWER**: HBO admits only that Paragraph 86 accurately quotes a portion of 47 CFR § 64.1200(f)(11) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

87.    HBO's telephone calls and pre-recorded messages to Plaintiff's cellular telephone constituted "telemarketing" as this terms is defined by 47 CFR § 64.1200(f)(12).

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 87.

88.    47 CFR § 64.1200(f)(12) states that "[t]he term *telemarketing* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

**ANSWER**: HBO admits only that Paragraph 88 accurately quotes a portion of 47 CFR § 64.1200(f)(12) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

89.    HBO's telephone calls and pre-recorded messages to Plaintiff's cellular telephone constituted "telephone solicitation" as this terms is defined by 47 CFR § 64.1200(f)(14).

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 89.

90.    47 CFR § 64.1200(f)(14) states that "[t]he term *telephone solicitation* means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person . . . ."

**ANSWER**: HBO admits only that Paragraph 90 accurately quotes a portion of 47 CFR § 64.1200(f)(14) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

91.     HBO's telephone calls and pre-recorded messages to Plaintiff's cellular telephone constituted "unsolicited advertisement" as this terms is defined by 47 CFR § 64.1200(f)(15).

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 91.

92.     47 CFR § 64.1200(f)(15) states that "[t]he term *unsolicited advertisement* means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."

**ANSWER**: HBO admits only that Paragraph 92 accurately quotes a portion of 47 CFR § 64.1200(f)(15) and denies any remaining allegations, including characterizations Plaintiff insinuates are to be drawn from the quoted language.

93.     HBO used one or more pre-recorded telemarketing messages when it called cellular telephone numbers with Illinois based area codes.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 93.

94.     HBO used one or more pre-recorded telemarketing messages when it called cellular telephone numbers with area codes associated with states other than Illinois.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 94.

95.     HBO did not have Plaintiff's "prior express consent" to call his cellular number using an automatic telephone dialing system or an artificial or pre-recorded voice pursuant to 47 U.S.C. § 227(b)(1)(A)(iii).

**ANSWER**:  HBO states that it never called Plaintiff and HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 95.

96.     HBO called from phone numbers 773-536-1366, 773-536-1360, 773-536-1363, 773-839-4880, 773-839-5428, 773-839-4879, and 773-801-5597.

**ANSWER**:  HBO denies the allegations contained in Paragraph 96.

97.     As alleged above, 773 is Chicago and a Chicagoland area code.

**ANSWER**:  HBO admits only that when the 773 area code was implemented, it applied to portions of the City of Chicago, and HBO denies that it has knowledge or information sufficient to form a belief as to the truth of all remaining allegations contained in Paragraph 97.

98.     HBO utilized the 773 area code to induce Plaintiff to think that he was receiving a call from a local telephone number.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 98.

99.     HBO utilized the 773 area code to induce Plaintiff to answer it calls.

**ANSWER**:  HBO denies the allegations contained in Paragraph 99.

100.     HBO utilized the 773 area code to induce Plaintiff to answer it calls on the premise that Plaintiff would be more likely to answer a call form an unknown local number than an unknown number from Florida.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 100.

101.     HBO "spoofed" local area code numbers to fool Plaintiff into answering his phone.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 101.

102. According to the FCC:

> "Spoofing" occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity. Spoofing is often used as part of an attempt to trick someone into giving away valuable personal information so it can be used in fraudulent activity or sold illegally. U.S. law and FCC rules prohibit most types of spoofing.

> Caller ID lets consumers avoid unwanted phone calls by displaying caller names and phone numbers, but the caller ID feature is sometimes manipulated by spoofers who masquerade as representatives of banks, creditors, insurance companies, or even the government.

> *See https://www.fcc.gov/consumers/guides/spoofing-and-caller-id*

**ANSWER**: HBO admits only that Paragraph 102 accurately quotes a portion of the text included at http://transition.fcc.gov/cgb/consumerfacts/callerid.pdf, which is not the link included in Paragraph 102 of the Complaint, and denies any remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted language, including with regard to the precedential value of and applicability of the excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

103. As explained herein, on information and belief, HBO's telephone calls to Plaintiff's cellular phone were placed via utilized autodialers or autodialer systems

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 103.

104. Additionally, HBO's telephone calls to Plaintiff's cellular phone utilized recorded-messages.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the

allegations contained in Paragraph 104.

105.    HBO called Plaintiff's cellular phone on August 11, 2017.

**ANSWER**:  HBO denies the allegations contained in Paragraph 105.

106.    During this on August 11, 2017, call, the telemarketer who spoke with Plaintiff said he "I'm with the Health Registration Center."

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 106.

107.    During this call the telemarketer stated "I'm able to find you the best [insurance] program for the best price."

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 107.

108.    HBO placed several calls to Plaintiff on August 11, 2017.

**ANSWER**:  HBO denies the allegations contained in Paragraph 108.

109.    During one of the August 11, 2017, calls, Plaintiff told the telemarketer twice, "don't call back."

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 109.

110.    During this August 11, 2017, call, Plaintiff was transferred to another telemarketer who told him that she was calling on behalf of "HBO" and offered to provide him with health insurance.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110, except denies that any third party

31

was authorized to tell Plaintiff that it was calling on behalf of HBO to provide health insurance.

111.    HBO continued to call after August 11, 2017, which is the day that Plaintiff told the telemarketer to stop calling him.

**ANSWER**: HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 111, except denies that it ever called Plaintiff.

112.    On information and belief, none of HBO's pre-recorded messages identified HBO by its full legal name of "HEALTH BENEFITS ONE, LLC."

**ANSWER**: HBO states that it does not use prerecorded messages and therefore HBO denies the allegations contained in Paragraph 112.

113.    HBO placed, or caused to be placed, over 100 calls to Plaintiff's cellular phone number without his consent.

**ANSWER**: HBO denies the allegations contained in Paragraph 113.

114.    Sometimes, HBO would call Plaintiff's cellular phone number 9 or more times in one day.

**ANSWER**: HBO denies the allegations contained in Paragraph 114.

115.    HBO's records will show that it called Plaintiff's cellular phone up to two (2) times a day at least one occasion.

**ANSWER**: HBO denies the allegations contained in Paragraph 115.

116.    HBO's records will show that it called Plaintiff's cellular phone number at least two (2) times a day on more than five (5) different days.

**ANSWER**: HBO denies the allegations contained in Paragraph 116.

117.    HBO's records will show that it called Plaintiff's cellular phone number at least two (2) times a day on more than ten (10) different days.

**ANSWER**: HBO denies the allegations contained in Paragraph 117.

118.    HBO's records will show that it called Plaintiff's cellular phone up to five (5) times a day at least one occasion.

**ANSWER**:  HBO denies the allegations contained in Paragraph 118.

119.    HBO's records will show that it called Plaintiff's cellular phone number at least five (5) times a day on more than five (5) different days.

**ANSWER**:  HBO denies the allegations contained in Paragraph 119.

120.    HBO's records will show that it called Plaintiff's cellular phone number at least five (5) times a day on more than ten (10) separate days.

**ANSWER**:  HBO denies the allegations contained in Paragraph 120.

121.    HBO's records will show that it called Plaintiff's cellular phone up to seven (7) times a day at least one occasion.

**ANSWER**:  HBO denies the allegations contained in Paragraph 121.

122.    HBO's records will show that it called Plaintiff's cellular phone number at least seven (7) times a day on more than five (5) different days.

**ANSWER**:  HBO denies the allegations contained in Paragraph 122.

123.    HBO's records will show that it called Plaintiff's cellular phone number at least seven (7) times a day on more than ten (10) separate days.

**ANSWER**:  HBO denies the allegations contained in Paragraph 123.

124.    HBO's records will show that it called Plaintiff's cellular phone up to nine (9) times a day at least one occasion.

**ANSWER**:  HBO denies the allegations contained in Paragraph 124.

125.    HBO's records will show that it called Plaintiff's cellular phone number at least nine (9) times a day on more than five (5) different days.

**ANSWER**:  HBO denies the allegations contained in Paragraph 125.

126.    HBO's records will show that it called Plaintiff's cellular phone number at least nine (9) times a day on more than ten (10) separate days.

**ANSWER**:  HBO denies the allegations contained in Paragraph 126.

127.    As set forth above, HBO placed up to three (3) unwanted telemarketing calls to Plaintiff's cellular phone on at least one day.

**ANSWER**:  HBO denies the allegations contained in Paragraph 127.

128.    As set forth above, HBO placed up to five (5) unwanted telemarketing calls to Plaintiff's cellular phone on at least one day.

**ANSWER**:  HBO denies the allegations contained in Paragraph 128.

129.    As set forth above, HBO placed up to seven (7) unwanted telemarketing calls to Plaintiff's cellular phone on at least one day.

**ANSWER**:  HBO denies the allegations contained in Paragraph 129.

130.    As set forth above, HBO placed up to nine (9) unwanted telemarketing calls to Plaintiff's cellular phone on at least one day.

**ANSWER**:  HBO denies the allegations contained in Paragraph 130

131.    The calls were made on dates that included, but were not limited to, August 11, 2017, August 13, 2017, August 14, 2017, August 15, 2017, August 16, 2017, August 17, 2017, August 18, 2017, August 19, 2017, September 15, 2017, September 16, 2017, September 25, 2017, September 25, 2017, September 27, 2017, September 28, 2017, September 29, 2017, October 2, 2017, October 3, 2017, October 4, 2017, and October 5, 2017.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the

allegations contained in Paragraph 131.

132.    The repeated and continuous nature of the calls made by HBO to Plaintiff's cellular phone were harassing in nature.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the

allegations contained in Paragraph 132, except denies that it has knowledge or information

sufficient to form a belief as to the truth of the allegations regarding Plaintiff's perception.

133.    The repeated and continuous nature of the calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer emotional distress.

**ANSWER**:   HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 133, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding Plaintiff's reaction.

134.    The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of invasion of privacy resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:   HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 134, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

135.    The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of frustration and anger resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:   HBO denies the allegations contained in Paragraph 135, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

136.    The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of anxiety resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:   HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 136, except denies that it has knowledge or information

sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's

purported harm.

137.     The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of aggravation resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the

allegations contained in Paragraph 137, except denies that it has knowledge or information

sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's

purported harm.

138.     The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of increased risk of personal injury due to the distraction resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the

allegations contained in Paragraph 138, except denies that it has knowledge or information

sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's

purported harm.

139.     The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of diminished use of his telephone resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the

allegations contained in Paragraph 139, except denies that it has knowledge or information

sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's

purported harm.

140.     The repeated and continuous nature of the unsolicited telephone calls made by

36

HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of missed calls resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 140, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

141.    The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of loss of a battery charge resulting from answering and/or receiving unsolicited telephone calls; loss of battery life resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 141, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

142.    The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of wear and tear on his phone resulting from answering and receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 142, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

143.    The repeated and continuous nature of the unsolicited telephone calls made by HBO to Plaintiff's cellular phone caused Plaintiff to suffer actual harm in the form of unnecessary per-kilowatt electricity costs resulting from having to recharge his cellular telephone resulting from answering and/or receiving unsolicited telephone calls and/or pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 143, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

144.    Concerned about the violations of his rights and the invasion of his privacy, Plaintiff sought the assistance of counsel which led him to spend his personal time having to consult with a lawyer when Plaintiff would not have been required to do so if Defendant had stopped calling him when he asked Defendant to stop calling him.

**ANSWER**:  HBO denies the allegations contained in Paragraph 144, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the form of Plaintiff's purported harm.

145.    In enacting the TCPA, Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm.

**ANSWER**:  HBO denies the allegations contained in Paragraph 145, except admits that the TCPA includes a purported private right of action for some violations.

146.    In enacting the TCPA, Congress made specific findings that "unrestricted telemarketing can be an intrusive invasion of privacy" and are a "nuisance." Telephone Consumer Protection Act of 1991, Pub. L. 102–243, § 2, ¶¶ 5, 10, 12, 13, 105 Stat. 2394 (1991), see also *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

**ANSWER**:  HBO admits only that some of the words attributed to Telephone Consumer Protection Act of 1991 in Paragraph 146 appear in Section 2 of Pub. L. 102–243, and that the Supreme Court's decision in *Mims* cites to Section 2, and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the inaccurately quoted language, including with regard to the precedential value of and applicability of the inaccurately excerpted language to this matter), except denies that it has knowledge or information sufficient to form a

belief as to the truth of the quoted material and Congressional findings.

147.    As the Supreme Court has explained, Congress has the power to enact laws to elevate concrete harm "to the status of legally cognizable injuries." *Spokeo, Inc., v. Robbins*, 136 S. Ct. 1540, 1549 (2016). "Congress is well positioned to identify intangible harms that meet minimum Article III requirements." *Id*. "[B]oth history and the judgment of Congress play important roles" in deciding whether a statutory violation is a concrete, de facto injury." *Id*.

**ANSWER**:  HBO admits only that some of the words attributed to the Supreme Court appear in its opinion in *Spokeo* appear in Paragraph 147, and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the inaccurately quoted language, including with regard to the precedential value of and applicability of the inaccurately excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

148.    In enacting the TCPA, Congress sought to protect consumers from the unwanted intrusion and nuisance.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 148.

149.    The session law for the TCPA itself stated: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. 102–243, §2, Dec. 20, 1991, 105 Stat. 2394, ¶ 12.

**ANSWER**:  HBO admits only that Paragraph 149 accurately quotes a portion of the Telephone Consumer Protection Act of 1991, Pub. L. 102–243, §§ 2, ¶¶ 1-12, 105 Stat. 2394 (1991), and denies all remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the inaccurately quoted language, including with regard to the precedential value of and applicability of the inaccurately excerpted language to this matter), except denies that it has knowledge or information sufficient to form a belief as to the truth of the quoted material.

150.    Actions to remedy a HBO's invasions of privacy, intrusion upon seclusion, and nuisance have long been heard by American courts, and the right of privacy is recognized by most states. *See Restatement (Second) of Torts § 652(B)* (Am. Law Inst. 1977).

**ANSWER**: HBO denies the allegations contained in Paragraph 150, except denies that it has knowledge or information sufficient to form a belief as to the truth of the allegations regarding the generalized practices of courts and states.

151.    The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent.

**ANSWER**:  HBO denies the allegations in Paragraph 151, except admits that some sections of the TCPA require consent for some types of communication.

152.    Courts have held that TCPA alleged demonstrate concrete and legally cognizable harm. *See, e.g.*, *Susinno v. Work Out World Inc.*, 862 F.3d 346, 348 (3d Cir. 2017) (holding that Article III standing existed where a TCPA plaintiff received a "single solicitation" to her cell phone from a fitness company that resulted in the "receipt of [a] call and voicemail"); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (finding two unwanted text messages constituted a concrete injury under the TCPA as they "present the precise harm and infringe the same privacy interests Congress sought to protect*"); Etzel v. Hooters of Am., LLC*, 223 F. Supp. 3d 1306, 1311, 1312 (N.D. Ga. 2016) (rejecting application of de minimis rule to "a lone text message after withdrawal of consent" (internal quotation marks omitted) given "the [unambiguous] language of the TCPA . . . that a violation can occur from a single call" under §227(b)(1)(A) in contrast to § 227(c)(5) which requires more than one call*); Cabiness v. Educ. Fin. Solutions, LLC* 2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at *5-6 (a violation of the TCPA "is sufficient on its own to constitute an injury in fact" because "[e]very unconsented call through the use of an ATDS to a consumer's cellular phone results in actual harm"); *Cour v. Life 360, Inc.,* 2016 U.S. Dist. LEXIS 98945, 2016 WL 4039279, at *2 (N.D. Cal. July 28, 2016) (finding concrete injuries where plaintiff alleged he received one text message in violation of the TCPA); *Meyer v. Bebe Stores, Inc.,* 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *2 (N.D. Cal. Feb. 2, 2015) (finding concrete injuries based on one alleged violation of the TCPA); *Smith v. Microsoft Corp.,* No. 11-CV-1958 JLS (BGS), 2012 U.S. Dist. LEXIS 101197 2012 WL 2975712, at *6 (S.D. Cal. July 20, 2012) (finding "at by alleging he received a text message in violation of the TCPA, [plaintiff] has established a particularized injury in satisfaction of Article III premised on the invasion of his privacy"); *Hossfeld v. Compass Bank*, 2017 U.S. Dist. LEXIS 182571, *14-15 (N.D. Al. Nov. 3, 2017).

**ANSWER**:  HBO admits only that some courts have held under some circumstances that they have Article III jurisdiction over some TCPA claims (while others have not), that some of

the decisions from those courts are listed in Paragraph 152, and that some of the words from those decisions appears in Paragraph 152. HBO denies any remaining allegations (such as characterizations Plaintiff insinuates are to be drawn from the quoted and summarized language, including with regard to the precedential value of and applicability of the quoted and summarized language to this matter).

**SUMMARY OF VIOLATIONS APPLICABLE TO ALL TCPA COUNTS**

153. As set forth above, HBO, through its agents, representatives, and/or employees acting within the scope of their authority, violated 47 U.S.C. § 227(b)(1)(A)(iii).

**ANSWER**: HBO denies the allegations contained in Paragraph 153.

154. In particular, HBO violated Section 227(b)(1)(A)(iii) because it did not have Plaintiff's consent when it placed telemarketing calls to Plaintiff's cellular telephone with an automatic telephone dialing system as defined by 47 U.S.C. §227(a)(1) or "predictive dialer" as defined by the FCC.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 154.

155. Additionally, HBO violated Section 227(b)(1)(A)(iii) because it did not have consent to play or leave pre-recorded telemarketing messages on Plaintiff's cellular telephone.

**ANSWER**: HBO states that it never called Plaintiff and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 155.

156. HBO's pre-recorded messages to Plaintiff violated 447 CFR 64.1200(b)(1) because the messages failed to "[a]the beginning of the message, state clearly the identity of the business, individual, or other entity that is responsible for initiating the call."

**ANSWER**: HBO states that it never called Plaintiff and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 156.

157. HBO's pre-recorded messages to Plaintiff violated 47 CFR § 64.1200(b)(2) because the messages failed to "[d]uring or after the message, state clearly the telephone number

(other than that of the autodialer or prerecorded message player that placed the call) of such business, other entity or individual."

**ANSWER**: HBO states that it never called Plaintiff and does not make prerecorded calls

and therefore HBO denies the allegations contained in Paragraph 157.

158.    HBO's pre-recorded messages to Plaintiff violated 47 CFR § 64.1200(b)(3) because the messages failed to "provide an automated, interactive voice- and/or key press-activated opt-out mechanism for the called person to make a do-not-call request, including brief explanatory instructions on how to use such mechanism, within two (2) seconds of providing the identification information required in paragraph (b)(1) of this section."

**ANSWER**: HBO states that it never called Plaintiff and does not make prerecorded calls

and therefore HBO denies the allegations contained in Paragraph 158.

159.    HBO committed similar violations the TCPA and 47 CFR § 64.1200(1), (2) and (3) as to members of the putative classes.

**ANSWER**: HBO denies the allegations contained in Paragraph 159.

160.    Just like Plaintiff was harmed by HBO's conduct, members of the putative classes were harmed by HBO's unlawful telemarketing and solicitation calls to their cellular phones.

**ANSWER**: HBO denies the allegations contained in Paragraph 160.

161.    HBO has the burden of proof to demonstrate that it had the consent of Plaintiff and the proposed class members to call them on their cellular phones using an ATDS.

**ANSWER**: HBO admits only that some courts have held that "consent" is an affirmative

defense under the TCPA and denies any remaining allegations contained in Paragraph 161.

162.    Pursuant to 47 U.S.C. §227(b)(3)(B), as a result of these violations, HBO is liable to Plaintiff and the other members of the Nationwide Class for a minimum of $500 for call and separate violation or violations.

**ANSWER**: HBO denies the allegations contained in Paragraph 162.

163.    Alternatively, pursuant to 47 U.S.C. §227(b)(3)(C), as a result of these violations, HBO's willful and knowing violations of the TCPA should trigger this Honorable Court's ability

to triple the damages under 47 U.S.C. §227(b)(3)(C) for each call and separate violation or violations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 163.

### COUNT I – Individual Claim for Violations of the TCPA
*Autodialed or Predictively Dialed Telephone Calls Without Consent*

164.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 163 of the Complaint.

165.    As set forth directly above, HBO violated the TCPA by placing telemarketing and solicitation calls to Plaintiff's cellular phone without his consent through the use of an automatic telephone dialing system and/or a predictive dialer.

**ANSWER**:  HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 165.

166.    HBO committed willful and knowing violations of the TCPA.

**ANSWER**:  HBO denies the allegations contained in Paragraph 166.

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

    a.  Declare HBO's phone calls to be violations of the TCPA;

    b.  Enjoin HBO from contacting Plaintiff in violation of the TCPA;

    c.  Award Plaintiff statutory damages of at least $500 per phone call;

    d.  Award Plaintiff treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

    e.  Award Plaintiff any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

## COUNT II – Individual Claim for Violations of the TCPA
### *Pre-Recorded Messages Without Consent*

167.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 166 of the Complaint.

168.    As set forth directly above, HBO violated the TCPA by calling Plaintiff's cellular phone without his consent with prerecorded telemarketing messages.

**ANSWER**:  HBO states that it never called Plaintiff and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 168.

169.    HBO committed willful and knowing violations of the TCPA.

**ANSWER**:  HBO denies the allegations contained in Paragraph 169.

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

  a.  Declare HBO's phone calls to be violations of the TCPA;
  b.  Enjoin HBO from contacting Plaintiff in violation of the TCPA;
  c.  Award Plaintiff statutory damages of at least $500 per message;
  d.  Award Plaintiff treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
  e.  Award Plaintiff any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

## COUNT III – Individual Claim for Violations of 47 CFR § 64.1200(1)

170.    Plaintiff restates and realleges the foregoing allegations as though fully set forth

herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 169 of the Complaint.

171.    As set forth directly above, HBO violated the regulations set forth in 47 CFR § 64.1200(1).

**ANSWER**:  HBO denies the allegations contained in Paragraph 171.

172.    HBO committed willful and knowing violations of the above identified regulations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 172.

173.    HBO's conduct impacted and harmed Plaintiff.

**ANSWER**:  HBO denies the allegations contained in Paragraph 173.

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

   a.  Declare HBO's phone calls to be violations of 47 CFR § 64.1200(1);

   b.  Enjoin HBO from contacting Plaintiff in violation of 47 CFR § 64.1200(1);

   c.  Award Plaintiff statutory damages of at least $500 per violation of 47 CFR § 64.1200(1);

   d.  Award Plaintiff treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

   e.  Award Plaintiff any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

**COUNT IV – Individual Claim for Violations of 47 CFR § 64.1200(2)**

174.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 173 of the Complaint.

175.    As set forth directly above, HBO violated the regulations set forth in 47 CFR § 64.1200(2).

**ANSWER**:  HBO denies the allegations contained in Paragraph 175.

176.    HBO committed willful and knowing violations of the above identified regulations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 176.

177.    HBO's conduct impacted and harmed Plaintiff.

**ANSWER**:  HBO denies the allegations contained in Paragraph 177.

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

a.   Declare HBO's phone calls to be violations of 47 CFR § 64.1200(2);

b.   Enjoin HBO from contacting Plaintiff in violation of 47 CFR § 64.1200(2);

c.   Award Plaintiff statutory damages of at least $500 per violation of 47 CFR § 64.1200(2);

d.   Award Plaintiff treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

e.   Award Plaintiff any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

### COUNT V – Individual Claim for Violations of 47 CFR § 64.1200(3)

178.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 177 of the Complaint.

179.    As set forth directly above, HBO violated the regulations set forth in 47 CFR § 64.1200(3).

**ANSWER**:  HBO denies the allegations contained in Paragraph 179.

180.    HBO committed willful and knowing violations of the above identified regulations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 180.

181.    HBO's conduct impacted and harmed Plaintiff.

**ANSWER**:  HBO denies the allegations contained in Paragraph 181.

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

a.  Declare HBO's phone calls to be violations of 47 CFR § 64.1200(3);

b.  Enjoin HBO from contacting Plaintiff in violation of 47 CFR § 64.1200(3);

c.  Award Plaintiff statutory damages of at least $500 per violation of 47 CFR § 64.1200(3);

d.  Award Plaintiff treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

e.  Award Plaintiff any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

### COUNT VI – Class Based Claims for Violations of the TCPA
*Autodialed or Predictively Dialed Telephone Calls Without Consent*

182.    Plaintiff restates and realleges the foregoing allegations as though fully set forth

47

herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 181 of the Complaint.

183.    As set forth directly above, HBO violated the TCPA by placing telemarketing and solicitation calls to class members' cellular phone without their consent through the use of an automatic telephone dialing system and/or a predictive dialer.

**ANSWER**:  HBO states that it did not make any of the alleged calls and therefore HBO denies the allegations contained in Paragraph 183.

184.    HBO committed willful and knowing violations of the TCPA.

**ANSWER**:  HBO denies the allegations contained in Paragraph 184.

185.    HBO's conduct impacted and harmed more than forty (40) persons living inside the United States.

**ANSWER**:  HBO denies the allegations contained in Paragraph 185.

186.    The proposed nationwide class is tentatively identified as:

>     All persons in the United States who, within the four years prior to filing
>     of the filing of this action through the date of certification, HBO called
>     on their cell phone using equipment with the capacity to dial numbers
>     without human intervention.

**ANSWER**:  HBO admits only that Paragraph 186 includes Plaintiff's definition of a nationwide class he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

a.   Declare HBO's phone calls to be violations of the TCPA;

b.   Enjoin HBO from contacting members of the Nationwide Class, in violation of the

TCPA;

c. Award members of the Nationwide Class statutory damages of at least $500 per phone call;

d. Award members of the Nationwide Class treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and

e. Award members of the Nationwide Class any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

## COUNT VII – Class Based Claims for Violations of the TCPA
### *Pre-Recorded Messages Without Consent*

187.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 186 of the Complaint.

188.    As set forth directly above, HBO violated the TCPA by calling the cellular phones of Class Members with pre-recorded telemarketing messages.

**ANSWER**:  HBO states that it did not make any of the alleged calls and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 188.

189.    HBO committed willful and knowing violations of the TCPA.

**ANSWER**:  HBO denies the allegations contained in Paragraph 189.

190.    HBO's conduct impacted and harmed more than forty (40) persons living inside the United States.

**ANSWER**:  HBO denies the allegations contained in Paragraph 190.

191.    The proposed nationwide class is tentatively identified as:

All persons in the United States who, within the four years prior to filing of the filing of this action through the date of certification, HBO called on their cell phone using pre-recorded messages.

**ANSWER**:  HBO admits only that Paragraph 191 includes Plaintiff's definition of a nationwide class he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

a. Declare HBO's pre-recorded to be violations of the TCPA;
b. Enjoin HBO from contacting members of the Nationwide Class, in violation of the TCPA;
c. Award members of the Nationwide Class statutory damages of at least $500 per message;
d. Award members of the Nationwide Class treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C); and
e. Award members of the Nationwide Class any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

**COUNT VIII – Class Based Claims for Violations of 47 CFR § 64.1200(1)**

192.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 191 of the Complaint.

193.    As set forth directly above, HBO violated the regulations set forth in 47 CFR § 64.1200(1).

**ANSWER**:  HBO denies the allegations contained in Paragraph 193.

194.    HBO committed willful and knowing violations of the above identified regulations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 194.

195.    HBO's conduct impacted and harmed more than forty (40) persons living inside the United States.

**ANSWER**:  HBO denies the allegations contained in Paragraph 195.

196.    The proposed nationwide class is tentatively identified as:

> All persons in the United States who, within the four years prior to filing of the filing of this action through the date of certification, HBO called and HBO's pre-recorded message did not comply with 47 CFR § 64.1200(1).

**ANSWER**:  HBO admits only that Paragraph 196 includes Plaintiff's definition of a nationwide class he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

a.    Declare HBO's phone calls to be violations of 47 CFR § 64.1200(1);

b.    Enjoin HBO from contacting other members of the Nationwide Class, in violation of 47 CFR § 64.1200(1);

c.    Award members of the Nationwide Class statutory damages of at least $500 for each violation of 47 CFR § 64.1200(1);

d.    Award members of the Nationwide Class treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C) for each violation of 47 CFR § 64.1200(1); and

e.    Award Plaintiff, and the other members of the Nationwide Class, any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any

putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

### COUNT IX – Class Based Claims for Violations of 47 CFR § 64.1200(2)

197.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 196 of the Complaint.

198.    As set forth directly above, HBO violated the regulations set forth in 47 CFR § 64.1200(2).

**ANSWER**:  HBO denies the allegations contained in Paragraph 198.

199.    HBO committed willful and knowing violations of the above identified regulations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 199.

200.    HBO's conduct impacted and harmed more than forty (40) persons living inside the United States.

**ANSWER**:  HBO denies the allegations contained in Paragraph 200.

201.    The proposed nationwide class is tentatively identified as:

> All persons in the United States who, within the four years prior to filing of the filing of this action through the date of certification, HBO called and HBO's pre-recorded message did not comply with 47 CFR § 64.1200(2).

**ANSWER**:  HBO admits only that Paragraph 201 includes Plaintiff's definition of a nationwide class he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the

following relief:

    a.   Declare HBO's phone calls to be violations of 47 CFR § 64.1200(2);

    b.   Enjoin HBO from contacting other members of the Nationwide Class, in violation of 47 CFR § 64.1200(2);

    c.   Award members of the Nationwide Class statutory damages of at least $500 for each violation of 47 CFR § 64.1200(2);

    d.   Award members of the Nationwide Class treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C) for each violation of 47 CFR § 64.1200(2); and

    e.   Award Plaintiff, and the other members of the Nationwide Class, any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

### COUNT X – Class Based Claims for Violations of 47 CFR § 64.1200(3)

202.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 201 of the Complaint.

203.    As set forth directly above, HBO violated the regulations set forth in 47 CFR § 64.1200(3).

**ANSWER**:  HBO denies the allegations contained in Paragraph 203.

204.    HBO committed willful and knowing violations of the above identified regulations.

**ANSWER**:  HBO denies the allegations contained in Paragraph 204.

205.    HBO's conduct impacted and harmed more than forty (40) persons living inside the United States.

**ANSWER**:  HBO denies the allegations contained in Paragraph 205.

206.    The proposed nationwide class is tentatively identified as:

> All persons in the United States who, within the four years prior to filing of the filing of this action through the date of certification, HBO called and HBO's pre-recorded message did not comply with 47 CFR § 64.1200(3).

**ANSWER**:  HBO admits only that Paragraph 206 includes Plaintiff's definition of a nationwide class he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and the other members of the Nationwide Class, respectfully requests that this Honorable Court issue the following relief:

a.  Declare HBO's phone calls to be violations of 47 CFR § 64.1200(3);

b.  Enjoin HBO from contacting other members of the Nationwide Class, in violation of 47 CFR § 64.1200(3);

c.  Award members of the Nationwide Class statutory damages of at least $500 for each violation of 47 CFR § 64.1200(3);

d.  Award members of the Nationwide Class treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C) for each violation of 47 CFR § 64.1200(3); and

e.  Award Plaintiff, and the other members of the Nationwide Class, any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

**COUNT XI – Individual Claims Pursuant to the Illinois Automatic Telephone Dialers Act**

207.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 206 of the Complaint.

208.    Under the Illinois Automatic Telephone Dialers Act ("ATDA") it is unlawful to

telephone persons and play pre-recorded messages where the telephone number called was called through the use of a device that successively dialed integers. *See* 815 ILCS 305/15(c) and 305/30(a).

**ANSWER**: HBO denies the allegations contained in Paragraph 208.

209. Additionally, the ATDA requires that live operator must also "inquire at the beginning of the call whether the person called consents to hear the pre-recorded message." 815 ILCS § 305/15(b)(2).

**ANSWER**: HBO denies the allegations contained in Paragraph 209.

210. HBO did not obtain Plaintiff's consent before it played pre-recorded telemarketing messages on his cellular phone.

**ANSWER**: HBO states that it never called Plaintiff and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 210.

211. HBO made numerous phone calls to the Plaintiff without his prior express consent.

**ANSWER**: HBO states that it never called Plaintiff and therefore HBO denies the allegations contained in Paragraph 211.

212. HBO violated the ATDA by playing a pre-recorded message placed by an autodialer without the Plaintiff's consent pursuant to 815 ILCS 305/30.

**ANSWER**: HBO states that it did not make any of the alleged calls and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 212.

213. By making or causing to be made telephone calls utilizing an autodialer, HBO violated the ATDA.

**ANSWER**: HBO states that it did not make any of the alleged calls and therefore HBO denies the allegations contained in Paragraph 213.

214. As a result of the HBO's conduct, Plaintiff, suffered damages under 815 ILCS § 305/30, and is entitled to trebled actual damages, statutory damages in the amount of $500 per violation, and attorney's fees and costs.

**ANSWER**:  HBO denies the allegations contained in Paragraph 214.

WHEREFORE, Plaintiff GHALEB AZROUI, requests that this Honorable Court:

a.    Enter judgment in their favor and against HBO;

b.    Award actual damages in an amount to be determined at trial;

c.    Award punitive damages in an amount to be determined at trial;

d.    Award reasonable attorney's fees and costs pursuant to 815 ILCS 305/30(c); and

e.    Award any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

## COUNT XII - Class Claims Pursuant to the ATDA

215.    Plaintiff restates and realleges the foregoing allegations as though fully set forth herein.

**ANSWER**:  HBO incorporates by reference, as if fully set forth herein, its responses to the allegations contained in Paragraphs 1 through 214 of the Complaint.

216.    On information and belief, HBO called the telephone of more than 40 Illinois residents with a device the successively dialed integers.

**ANSWER**:  HBO states that it did not make any of the alleged calls and therefore HBO denies the allegations contained in Paragraph 216.

217.    On information and belief, just like with Plaintiff, HBO did not obtain the consent of more than 40 Illinois residents before it played pre-recorded telemarketing messages on their cellular phones.

**ANSWER**:  HBO states that it did not make any of the alleged calls and therefore HBO denies the allegations contained in Paragraph 217.

218.    HBO made numerous phone calls to the proposed Illinois Class without the prior express consent of this Illinois based putative class members.

**ANSWER**: HBO states that it did not make any of the alleged calls and therefore HBO denies the allegations contained in Paragraph 218.

219. HBO violated the ATDA by playing a pre-recorded message placed by an autodialer without the prior express consent of this Illinois based putative class members.

**ANSWER**: HBO states that it did not make any of the alleged calls and does not make prerecorded calls and therefore HBO denies the allegations contained in Paragraph 219.

220. By making or causing to be made telephone calls utilizing an autodialer, HBO violated the ATDA.

**ANSWER**: HBO states that it did not make any of the alleged calls and therefore HBO denies the allegations contained in Paragraph 220.

221. As a result of the HBO's conduct, members of the Illinois Class, suffered damages under 815 ILCS § 305/30, and are entitled to trebled actual damages, statutory damages in the amount of $500 per violation, and attorney's fees and costs.

**ANSWER**: HBO denies the allegations contained in Paragraph 221.

222. The proposed Illinois based class is tentatively identified as:

> All residents of Illinois, who, within the applicable statute of limitations, were called by HBO with device prohibited by the ATDA where HBO played pre-recorded messages on the class members' cellular phones without the consent of the persons receiving the calls or where HBO did not seek permission to play a pre-recorded message at the beginning of the call.

**ANSWER**: HBO admits only that Paragraph 222 includes Plaintiff's definition of an Illinois class he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

WHEREFORE, Plaintiff GHALEB AZROUI, on behalf of himself and other members of the Illinois Class, requests that this Honorable Court:

a.  Enter judgment in their favor and against HBO;

b.  Award actual damages in an amount to be determined at trial;

c.  Award punitive damages in an amount to be determined at trial;

d.  Award reasonable attorney's fees and costs pursuant to 815 ILCS 305/30(c); and

e.  Award any other relief this Honorable Court deems equitable and just.

**ANSWER**:  HBO denies that any class can be certified and denies that Plaintiff or any putative class member is entitled to the relief requested in this "WHEREFORE" clause of the Complaint, including all subparts.

## ADDITIONAL CLASS ACTION BASED ALLEGATIONS

223.    Plaintiff brings this action individually and behalf of classes, pursuant to Fed R. Civ. P. 23, defined in the above counts:

**ANSWER**:  HBO admits only that Paragraph 223 recites the fact that Plaintiff filed suit on behalf of himself and several classes he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

224.    Excluded from the Classes are: (i) HBO, any entity in which HBO has a controlling interest, and HBO's legal representatives, predecessors, successors, and assigns; (ii) governmental entities; (iii) HBO's employees, officers, directors, agents, and representatives and their family members; (iv) the Judge and the staff to whom this case is assigned, and any member of the Judge's immediate family.

**ANSWER**:  HBO admits only that Paragraph 224 recites the fact that Plaintiff seeks to exclude certain entities and individuals from the several classes he seeks to have certified and denies all remaining allegations (such as that his proposed class or any class can be certified).

### Numerosity

225.    The putative Classes comprise of many members, and are so numerous that joinder of all members of the Classes is impracticable.

**ANSWER**: HBO denies the allegations contained in Paragraph 225.

226. While the exact number of members of the Classes is presently unknown and can only be ascertained through discovery, Plaintiff believes there are hundreds of thousands of members of the putative classes based upon HBO's representation that it does business in all 50 states.

**ANSWER**: HBO denies the allegations contained in Paragraph 226 except denies that it has knowledge or information sufficient to establish the truth of the allegations regarding Plaintiff's beliefs.

227. Since all members of the putative classes received autodialed calls from HBO, the members can be easily identified through HBO's records or by other means such as commercially available databases of known names and addresses associated with telephone numbers.

**ANSWER**: HBO denies the allegations contained in Paragraph 227.

**Commonality and Predominance**

228. There are several questions of law and fact common to the claims of Plaintiff and members of the putative Classes, which predominate over any individual issues, including:

      a. Whether HBO used an "automatic telephone dialing system" or "artificial or prerecorded voice" calls as these terms are defined under the TCPA and the ATDA and whether the autodialed and automated calls placed to the cellular phones belonging to Plaintiff and members of the Classes are violations of the aforementioned statutes;

      b. Whether HBO has prior express permission, written or otherwise, to contact Plaintiff and other members of the putative Classes when it made calls to their cell phones using an automatic dialing system or artificial or pre-recorded voice;

      c. Whether HBO's calls were performed willfully or knowingly;

      d. Whether HBO's calls constituted solicitations.

**ANSWER**: HBO denies the allegations contained in Paragraph 228.

**Typicality**

229.    The legal and factual bases of HBO's liability both to Plaintiff and the other members of the putative classes are the same.

**ANSWER**:  HBO admits only that it has no liability to both Plaintiff and his purported

classes and denies all remaining allegations.

230.    HBO violated the TCPA and the ATDA, by calling, or causing to be called, the cellular number of each member of the putative classes, including Plaintiff's, by using an automatic telephone dialing system and/or pre-recorded voice message without prior express permission.

**ANSWER**:  HBO denies the allegations contained in Paragraph 230.

### Adequacy of Representation

231.    Plaintiff will fairly and adequately represent and protect the interests of the Classes and has retained counsel experienced in complex class actions.

**ANSWER**:  HBO denies the allegations contained in Paragraph 231.

232.    Plaintiff has no interest antagonistic to those of the members of the putative classes, and HBO does not have any defenses unique to Plaintiff.

**ANSWER**:  HBO denies the allegations contained in Paragraph 232.

233.    Neither Plaintiff nor his counsel will have any interests which might cause them not to vigorously pursue this claim.

**ANSWER**:  HBO denies the allegations contained in Paragraph 233.

234.    Plaintiff has retained competent counsel who has extensive experience in consumer class action litigation.

**ANSWER**:  HBO denies the allegations contained in Paragraph 234.

235.    In conjunction with class counsel, Mr. Vlahakis has obtained Court approval of numerous TCPA class actions. *See, e.g., In Re Capital One Telephone Consumer Protection Act Litigation*, 2012-cv-10064 (N.D. Ill.) ($75 million dollar TCPA based automated dialing system settlement); *Prater v. Medicredit, Inc.*, 2014-cv-0159 ($6.3 million dollar TCPA based automated dialing system wrong party settlement); *INSPE Associates v. CSL BIotherapries, Inc.* (N.D. Ill.) ($3.5 million fax based settlement).

**ANSWER**:  HBO admits only that a James C. Vlahakis entered an appearance as counsel for the defendant in each of the cases identified in Paragraph 235 and denies that it has knowledge or information sufficient to establish the truth of all remaining allegations.

236.    Additionally, Mr. Vlahakis (as a former consumer class action defense attorney) has gained court approval of dozens of numerous FDCPA class actions.

**ANSWER**:  HBO admits only that a James C. Vlahakis entered an appearance as counsel for the defendant in each of the cases identified in Paragraphs 235, 237, and 238 and denies that it has knowledge or information sufficient to establish the truth of all remaining allegations.

237.    Mr. Vlahakis understands the types of defenses that are raised in TCPA class action as he defeated a TCPA class certification motion in *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. Mar. 28, 2013), reconsideration denied, 2013 U.S. Dist. LEXIS 105352 (N.D. Ill. July 29, 2013).

**ANSWER**:  HBO admits only that a James C. Vlahakis entered an appearance as counsel for the defendant in each of the cases identified in Paragraph 237 and denies that it has knowledge or information sufficient to establish the truth of all remaining allegations.

238.    Mr. Vlahakis also decertified a previously certified TCPA class action in *Pesce v. First Credit Services, Inc.*, 2012 U.S. Dist. LEXIS 188745 (N.D. Ill. June 6, 2012).

**ANSWER**:  HBO admits only that a James C. Vlahakis entered an appearance as counsel for the defendant in the case identified in Paragraph 238 and denies that it has knowledge or information sufficient to establish the truth of all remaining allegations.

239.    Mr. Vlahakis has ascertained the identities of putative TCPA class members individually and in conjunction with industry experts.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to establish the truth of the allegations in Paragraph 239.

240.    Mr. Vlahakis has litigated petitions for declaratory relief before the FCC.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to establish the truth of the allegations in Paragraph 240.

241.    Mr. Vlahakis' co-counsel is a highly competent and experienced consumer rights attorney.

**ANSWER**:  HBO denies that it has knowledge or information sufficient to establish the truth of the allegations in Paragraph 241.

### Appropriateness and Superiority

242.    A class action is an appropriate method for the fair and efficient adjudication of this controversy, and superior to other available methods for the fair and efficient adjudication of this controversy.

**ANSWER**:  HBO denies the allegations contained in Paragraph 242.

243.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the putative classes.

**ANSWER**:  HBO denies the allegations contained in Paragraph 243.

244.    Also, the likelihood that individual Class members will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary relief at issue for individual members of the putative classes.

**ANSWER**:  HBO denies the allegations contained in Paragraph 244, except denies that it has knowledge or information sufficient to establish the truth of the allegations regarding what unidentified individuals may or may not do.

245.    As such, the expense and burden of individual litigation would make it impracticable or impossible for proposed Classes to prosecute their claims individually.

**ANSWER**:  HBO denies the allegations contained in Paragraph 245.

246.    The trial and the litigation of Plaintiff's and Classes' members' claims are manageable.

**ANSWER**:  HBO denies the allegations contained in Paragraph 246.

## HBO'S SEPARATE OR ADDITIONAL DEFENSES

Pursuant in part to Federal Rule of Civil Procedure 8(c), and without assuming any burdens of proof or persuasion that would otherwise rest on Plaintiff, HBO asserts the following additional or affirmative defenses.  HBO reserves all rights to assert additional or amended defenses:

1.    The Complaint fails to state facts sufficient to constitute a cause of action upon which relief can be granted.

2.    The Court lacks subject matter jurisdiction over Plaintiff's claims.

3.    The Court lacks personal jurisdiction over the claims of the putative classes.

4.    Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because he/they consented to receive the calls allegedly at issue in this matter.

5.    Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because they were not charged for the calls allegedly at issue in this matter.

6.    Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the primary jurisdiction doctrine.

7.     Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the doctrine of laches or are otherwise time-barred.

8.    Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the doctrine of release.

9.    Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the doctrines of estoppel and equitable estoppel.

10. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the doctrines of waiver and/or ratification.

11. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part by the doctrine of unclean hands.

12. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the related doctrines of barratry, champerty, and maintenance.

13. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, for lack of any actual injury or standing to assert a claim.

14. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because any award would constitute unjust enrichment.

15. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the terms and conditions and/or limitations of liability contained in any applicable agreements.

16. Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because any alleged damages were not caused by HBO, but instead by intervening and superseding causes or circumstances, or by the acts or omissions of third-parties for which HBO is not responsible.

17. If Plaintiff is seeking actual damages on behalf of himself or putative class members, Plaintiff's claims or the claims of putative class members are barred, in whole or in part, because they failed to mitigate their damages, if any.

18. Plaintiff's claims on behalf of the putative class are barred because this case is not maintainable as a class action under Federal Rule of Civil Procedure 23 because the proposed class does not satisfy the requirements described therein, including, but not limited to, class definition,

ascertainability, numerosity, commonality, typicality, predominance, adequacy of representation, superiority, and manageability.

19.     Plaintiff's claims on behalf of the putative class are barred because Plaintiff is not a proper representative to bring this action on behalf of any proposed class.

20.     Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, by the First Amendment to the Constitution of the United States

21.     Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because certification of a class here would violate HBO's right to due process under the Constitution of the United States.

22.     Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because HBO did not willfully or knowingly violate the Telephone Consumer Protection Act of 1991 or any of its regulations.

23.     Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because HBO did not negligently violate the Telephone Consumer Protection Act of 1991 or any of its regulations.

24.     Plaintiff's claims and/or the claims of putative class members are barred, in whole or in part, because HBO substantially complied with the Telephone Consumer Protection Act of 1991 and its regulations.

25.     To the extent that Plaintiff or the putative class may seek recovery of attorneys' fees, such fees are not recoverable under the Telephone Consumer Protection Act of 1991.

*       *       *

HBO specifically reserves all additional or affirmative defenses that it may have against each putative class member which may arise and which are not identified above.  At this time, it

is not possible for HBO to delineate all such defenses against the putative class members or the class members against whom such defenses may apply because no putative class members have been identified, no classes have been certified (if any can be, which HBO denies) and the putative class members are not parties to the litigation.

## **HBO'S PRAYER FOR RELIEF**

WHEREFORE, HBO respectfully prays for judgment as follows:

1. That Plaintiff's Complaint be dismissed with prejudice and judgment entered in favor of HBO;

2. That Plaintiff and any member of the putative class take nothing by the Complaint; and

3. That HBO be awarded such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

HBO demands a trial by jury.

Dated:  August 3, 2018

Respectfully submitted,

By:  /s/ Justin O. Kay_____

Justin O. Kay (ARDC No. 6286557)
Matthew M. Morrissey (ARDC No. 6302575)
**DRINKER BIDDLE & REATH LLP**
191 North Wacker Drive, Suite 3700
Chicago, Illinois  60606
Phone:  (312) 569-1000
Email: Justin.Kay@dbr.com
Email:  Matthew.Morrissey@dbr.com

Yaniv Adar
**HOMER BONNER JACOBS**
1200 Four Seasons Tower
1441 Brickell Ave.
Miami, Florida 33131
Phone:  (305) 350-5136
Email: YAdar@homerbonner.com

*Counsel for Defendant Health Benefits One, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 3, 2018, I caused a true and correct copy of the foregoing notice to be filed on the Court's CM/ECF system, which served notice on all counsel of record.

James C. Vlahakis
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue Suite 200
Lombard, IL  60148
Phone:  (630) 575-8181
Email:  Jvlahakis@sulaimanlaw.com

Majdi Y. Hijazin
Law Offices of Majdi Y. Hijazin, Ltd.
2500 S. Highland Avenue Suite 220
Lombard, IL  60148
Phone:  (630) 575-8181, Ext. 125
Email:  Mhijazin@hijazinlaw.com

*Counsel for Plaintiff*

/s/ Justin O. Kay_____